IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIA and ROY HAMILTON<br><br>　　　　　　　　Plaintiffs<br><br>　　　v.<br><br>ARGENT MORTGAGE<br>COMPANY, LLC et al.<br>　　　　　　　　Defendants | CIVIL ACTION<br><br>NO.  1:08-cv-06370-RMB-AMD |

## ORDER

**AND NOW**, this _____ day of _____, 2010, upon consideration

of the Motion for Summary Judgment of Defendants Argent Mortgage Company, LLC, and any

response by Plaintiffs thereto, **IT IS HEREBY ORDERED** that:

　　　　1.　　　Defendant Argent Mortgage Company, LLC's Motion for Summary Judgment is

**GRANTED**; and

　　　　2.　　　all claims against Defendant Argent Mortgage Company, LLC are hereby

**DISMISSED WITH PREJUDICE**.

　　　　　　　　　　　　　　　　**BY THE COURT:**


　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**J.**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIA and ROY HAMILTON<br><br>          Plaintiffs<br><br>     v.<br><br>ARGENT MORTGAGE<br>COMPANY, LLC et al.<br><br>          Defendants | CIVIL ACTION<br><br><br><br>NO.  1:08-cv-06370-RMB-AMD |

## <u>DEFENDANT ARGENT MORTGAGE COMPANY, LLC'S<br>MOTION FOR SUMMARY JUDGMENT</u>

Defendant, Argent Mortgage Company, LLC, by its attorneys, hereby submits the instant

Motion for Summary Judgment, for the reasons set forth in the attached Memorandum of Law,

which is incorporated herein by reference.

Defendant Argent Mortgage Company, LLC request the entry of summary judgment in

its favor and against Plaintiffs.  A proposed form of Order is attached hereto.

Respectfully submitted,

**KAPLIN STEWART MELOFF REITER & STEIN, P.C.**


By:    **/s/ Parker V. Sherry**
          MICHAEL P. COUGHLIN, ESQUIRE
          PARKER V. SHERRY, ESQUIRE
          Union Meeting Corporate Center
          910 Harvest Drive
          Blue Bell, PA  19422
          Telephone:  (610) 941-2470
          Facsimile:  (610) 684-2033
          mcoughlin@kaplaw.com
          psherry@kaplaw.com
          Attorneys for Defendant Argent Mortgage Company, LLC

**Dated:  March 4, 2010**

# TABLE OF CONTENTS

I.    **PROCEDURAL HISTORY** ....................................................................1

II.   **UNDISPUTED MATERIAL FACTS** ..................................................2

    A.    **The Son of Plaintiffs, Raphael Hamilton, and His Purchase of the Property** ................................................2

    B.    **Plaintiffs' Previous Dealings with Defendant Lomax** ..............3

    C.    **Defendant Lomax Assisted Plaintiffs with the Purchase of the Property** ...........................................................3

    D.    **Allegedly Questionable Practices of Defendant Lomax in Connection with Plaintiffs' Purchase of the Property** ...............4

    E.    **Defendant Lomax's Alleged Representations to Plaintiffs Concerning the Terms of the Loan** ................5

    F.    **Closing on the Property** ...................................................5

    G.    **Plaintiffs' Inaction and Fraudulent Misconduct at Closing** ...............7

    H.    **Plaintiffs Admit that they Have Defaulted under the Mortgage and Loan Documents** ................8

    I.    **Plaintiffs Have Had Absolutely No Substantive Contact or Dealings with Defendant AMC Prior to Plaintiffs Filing the Instant Lawsuit** ................9

III.   **ARGUMENT** .........................................................................10

    A.    **Legal Standards for Motions for Summary Judgment** ................10

    B.    **Plaintiff Roy Hamilton Does Not Have Standing in the Instant Lawsuit and at a Bar Minimum, Plaintiff Roy Hamilton Should be Dismiss from this Action** ................12

    C.    **Plaintiffs' Claims Against Defendant AMC Fail as a Matter of Law Because Defendant AMC Was Not an Agent of Defendant Lomax** ................14

    D.    **Defendant AMC Cannot Be Liable for any Alleged Failure to Disclose when Plaintiff Maria Hamilton Elected not to Read, but nonetheless Signed, all of the Loan Documents** ................17

E.      Plaintiffs Had Absolutely No Communications
        with Defendant AMC, and Accordingly Cannot Be Liable ...........................19

F.      The Allegedly Improper Disclosures, Which Plaintiff
        Maria Hamilton Has Never Read, Are Not Deficient
        or Improper in any Respect, and to the Contrary,
        Plaintiff Maria Hamilton Received Complete and
        Accurate Disclosures under TILA....................................................................20

        1.      The Disclosures Were Accurate as a
                Matter of Law and Plaintiffs' TILA Claim
                Fails as a Matter of Law..........................................................20

        2.      Defendant AMC Is not Subject to Liability under
                HOEPA because the Fees Assessed Did not Come
                Close to Exceeding the HOEPA Threshold ...........................25

G.      Plaintiffs Claim under RESPA Fails as a Matter of Law...........................27

H.      Plaintiffs Have Not Produced or Identified any Evidence
        in Discovery to Support Their Claims and with Discovery
        Now Completed, Plaintiffs Have Not and Cannot
        Identify and Alleged Wrongdoing from Defendant AMC ...........................29

IV.     <u>CONCLUSION</u> ...........................................................................................31

## TABLE OF CITATIONS

**Cases**                                                                                                    **Page**

*Abdallah v. Abdallah*, 359 F.2d 170 (3d Cir. 1966) ....................................................18

*Aden v. Fortsch*, 169 N.J. 64, 776 A.2d 792 (2001) ....................................................17

*Assisted Living Associates of Moorestown, L.L.P. v. Moorestown Tp.*,
    31 F.Supp.2d 389 (D.N.J. 1998) ........................................................................19

*Berg v. Obama*, 586 F.3d 234 (3d Cir. 2009) ..............................................................13

*Berman v. Gurwicz*, 178 N.J. Super. 611, 429 A.2d 1084 (1981) ..............................18

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986) ................................11

*Cleveland v. Policy Management Systems Corp.*,
    526 U.S. 795, 1195 S.Ct. 1597 (1999) ..............................................................11

*Coastal Outdoor Advertising Group, LLC v. Tp. of Union*,
    2009 WL 5158439 (D.W.J. 2009) ......................................................................13

*Danvers Motor Co., Inc. v. Ford Motor, Co.*, 432 F.3d 286 (3d Cir. 2005)................13

*Delino v. Platinum Community Bank*, 628 F.Supp.2d 1226 (S.D. Cal. 2009)..............28

*Estate of Smith v. Marasco*, 318 F.3d 497 (3d Cir. 2003) ..........................................12

*Fleming Cos., Inc. v. Thriftway Medford Lakes, Inc.*, 913 F.Supp. 837 (D.N.J. 1995)................18

*FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834 (3d Cir. 1996)....................13

*Greenfield v. Twin Vision Graphics, Inc.*, 268 F. Supp.2d 358 (D.N.J. 2003)............................18

*Hawthorne v. American Mortgage, Inc.*, 489 F. Supp.2d 480 (E.D. Pa 2007)........................15, 16

*Heffron v. Adamar of New Jersey, Inc.*, 270 F.Supp.2d 562 (D.N.J. 2003) ....................11, 12, 31

*Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 161 A.2d 69 (1960) ..................................17

*Hoddeson v. Koos Bros.*, 47 N.J. Super. 224, 135 A.2d 702 (1957) ..........................................15

*Illingworth v. Nestle U.S.A., Inc.*, 926 F.Supp. 482 (D.N.J. 1996)..............................................11

*In re Cendant Corp. Securities Litigation*, 569 F.Supp.2d 440 (D.N.J. 2008) ............................18

*In re Ikon Office Solutions, Inc.*, 277 F.3d 658 (3d Cir. 2002) ................................................. 12, 31

*Interfaith Community Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248 (3d Cir. 2005) ....................... 13

*Jobe v. Argent Mortgage Co.*, 2009 WL 2461168 (M.D. PA. 2009) ........................................... 23

*Kohn v. AT&T Corp.*, 58 F.Supp.2d 393 (D.N.J. 1999) ............................................................ 12

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130 (1992) ....................................... 13

*Mutual Ben. Life Ins. Co. v. Zimmerman*, 783 F.Supp. 853 (D.N.J. 1992) ................................ 15

*N. Rothenberg & Son, Inc. v. Nako*, 49 N.J. Super. 372, 139 A.2d 783 (1985) .......................... 15

*New Jersey Automobile Ins. Plan v. Sciarra*, 103 F.Supp.2d 388 (D.N.J. 1998) ........................ 11

*Oquendo v. Bettcher Industries, Inc.*, 939 F.Supp. 357 (D.N.J. 1996) ....................................... 11

*Oscar v. Bank One, N.A.*, 2006 WL 401853 (E.D. Pa. 2006) .................................................... 23

*Park Inn Int'l, L.L.C. v. Mody Enterprises, Inc.*, 105 F.Supp.2d 370 (D.N.J. 2000) .................. 18

*Pell v. E.I. DuPont de Nemours & Co. Inc.*, 539 F.3d 292 (3d Cir. 2008) ................................. 13

*Pitak v. Bell Atlantic Network Services, Inc.*, 928 F.Supp. 1354 (D.N.J. 1996) ......................... 11

*Powell v. Alemaz, Inc.*, 339 N.J. Super. 33, 760 A.2d 1141 (2000) ........................................... 19

*R.J. Longo Construction Co., Inc. v. Transit America, Inc.*, 921 F.Supp. 1295 (D.N.J. 1996) ..... 11

*Raiczyk v. Ocean County Veterinary Hosp.*, 337 F. 3d 266 (3d Cir. 2004) ................................. 18

*Ricciardi v. Ameriquest Mortgage Co.*, 164 Fed.Appx. 221 (3d Cir. 2006) ................................ 20

*Ridgewood Bd. of Education v. N.E. ex rel. M.E.*, 172 F.3d 238 (3d Cir. 1999) .......................... 12

*Riverside Chiropractic Group v. Mercury Ins. Co.*,
    404 N.J. Super. 228, 961 A.2d 21 (2008) ............................................................................ 17

*Sarbak v. Citigroup Global Markets, Inc.*, 354 F.Supp.2d 531 (D.N.J. 2004) ............................ 17

*Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120 (3d Cir. 1998) .................................. 11, 31

*Seltzer v. I.C. Optics, Ltd.*, 339 F.Supp.2d 604 (D.N.J. 2004) .................................................. 15

*Sharp & Dohme v. U.S.*, 144 F.2d 456 (3d Cir. 1944).................................................13

*State v. Volpini*, 291 N.J. Super. 401, 677 A.2d 780 (1996)...................................18

*Sylvan Learning Systems, Inc. v. Gordon*, 135 F.Supp.2d 529 (D.N.J. 2000)..............................15

*Tilden Financial Corp. v. Palo Tire Service, Inc.*, 596 F.2d 604 (3d Cir. 1979)........................12

*Toll Bros., Inc. v. Tp. of Readington*, 555 F.3d 131 (3d Cir. 2009)........................................13

*U.S. ex. Rel. Kosenske v. Carlisle HMA, Inc.*, 554 F.3d 88 (3d Cir. 2009) ..................................10

*Watson v. Eastman Kodak Co.*, 235 F.3d 851 (3d Cir. 2000)...............................................11, 31

*Westmont Development Group, LLC v. Tp. of Haddon*, 625 F.Supp.2d 178 (D.N.J. 2009)..........18

*Yager v. American Life Ins. Ass'n*, 44 N.J. Super. 575, 131 A.2d 312 (1957) ..............................18

## Statutes

12 C.F.R. §226 ....................................................................................................25, 26

12 U.S.C.§2602 ........................................................................................................27

12 U.S.C. §2605 ..................................................................................................27, 28

15 U.S.C. §1602 ....................................................................................................25, 26

15 U.S.C. § 1605 ........................................................................................................21

15 U.S.C. §1635 ........................................................................................................23

15 U.S.C. §1639 ........................................................................................................25

15 U.S.C. §1640 ........................................................................................................20

## Rules of Civil Procedure

Fed.R.Civ.P. 56 ........................................................................................................10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MARIA and ROY HAMILTON
                       Plaintiffs          CIVIL ACTION

        v.

ARGENT MORTGAGE
COMPANY, LLC et al.
                   Defendants      NO.  1:08-cv-06370-RMB-AMD

## DEFENDANT ARGENT MORTGAGE COMPANY, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

### I.      PROCEDURAL HISTORY

Defendant Argent Mortgage Company, LLC (**"Defendant AMC"**), by and through its counsel, submit the within Memorandum of Law pursuant to Federal Rule of Civil Procedure (**"Fed.R.Civ.P."**) 56.

On December 29, 2008, Plaintiffs Maria and Roy Hamilton commenced an action in the United States District Court for the District of New Jersey by filing a Complaint against Defendants AMC, Empire Mortgage Services, Inc., Joe Lomax d/b/a Empire Mortgage Services Inc. (**"Defendant Lomax"**), Select Portfolio Servicing, Inc., U.S. Bank and John Does 1 – 10.[1] A true and correct copy of the Complaint is attached hereto as **Exhibit "A"** and incorporated herein by reference.  Defendant AMC denies the allegations contained in the Complaint.  A true and correct copy of Defendant AMC's Answer to the Complaint is attached hereto as **Exhibit "B"** and incorporated herein by reference.

---

[1] Defendants Empire Mortgage Services, Inc. and Defendant Lomax have been served but have not had any attorney(s) enter their appearance on their behalf in this matter, nor have those parties participated in any of the proceedings to date.

1

The Complaint contains the following four (4) counts: Count I – Truth in Lending Act ("TILA")/Home Ownership and Equity Protection Act ("HOEPA"); Count II – Real Estate Settlement Procedures Act ("RESPA"); Count III – New Jersey Consumer Fraud Act and Count IV – Fraudulent Misrepresentation (incorrectly identified as Count V in the Complaint). The Complaint asserts claims against the Defendant AMC for alleged violations of TILA/HOEPA and RESPA.

## II.    UNDISPUTED MATERIAL FACTS

### A.    The Son of Plaintiffs, Raphael Hamilton, and His Purchase of the Property

On or about July 6, 2006, Plaintiffs' son, Raphael Hamilton, purchased certain real property located at 5926 Clover Leaf Drive, Mays Landing, New Jersey (the **"Property"**). *See* certain documents produced in discovery, identified as AM0561-62, and attached collectively hereto as **Exhibit "C"** and incorporated herein by reference; *see also* October 7, 2009 Deposition of Plaintiff Maria Hamilton, p. 30, ln. 22 – p. 31, ln. 2, attached hereto as **Exhibit "D"** and incorporated herein by reference.

Immediately after purchasing the Property, Raphael Hamilton had difficulties making timely mortgage payments. *See* Ex. D, p., 50, ln. 12 – p. 51, ln. 17. As a result of Raphael Hamilton's difficulties in making mortgage payments for the Property, Plaintiffs concocted a plan whereby Plaintiffs would purchase the Property from Raphael Hamilton and move from California to New Jersey so that they could live in the Property with Raphael Hamilton and another of Plaintiffs' sons, Thomas Hamilton. *See* Ex. D, p. 44, ln. 13 – p. 46, ln. 1; p. 50, ln. 12 – p. 51, ln. 17; p. 52, ln. 1-3. In order to realize this plan, Plaintiffs contacted Defendant Lomax to see if such a plan was feasible. *See* Ex. D, p. 52, ln. 4-8.

2

**B.**    **Plaintiffs' Previous Dealings with Defendant Lomax**

Plaintiffs, as well as Raphael Hamilton, had previous dealings with Defendant Lomax before Raphael Hamilton purchased the Property. In particular, Defendant Lomax served as the mortgage broker assisting Plaintiffs in connection with the purchase of a property in Las Vegas, Nevada, but Defendant Lomax had an issue with "chang[ing] the name of the mortgage company" which took "an extended amount of time", and ultimately Plaintiffs' purchase of the property fell through. *See* Ex. D, p. 39, ln. 15-23. Plaintiff Roy Hamilton faults Defendant Lomax and attributes the failure of the closing of this property in Las Vegas to Defendant Lomax. *See* October 7, 2009 Deposition of Plaintiff Roy Hamilton, p. 16, ln. 7-10, attached hereto as **Exhibit "E"** and incorporated herein by reference.

In addition, Defendant Lomax assisted Raphael Hamilton in Raphael Hamilton's purchase of the Property. Raphael Hamilton was supposed to have obtained a no-money down mortgage on the Property, but a few days before closing, Defendant Lomax informed Raphael Hamilton that the terms of the mortgage had changed and Raphael Hamilton was suddenly required to put down approximately $40,000 in connection with his purchase of the Property. *See* Ex. D, p. 41, ln. 18 – p. 43, ln. 17. Raphael Hamilton paid approximately $248,000 for the Property. *See* Ex. C, AM0561-62; *see* Ex. D, p, 44, ln. 4-6.

Despite these alleged previous shortcomings of Defendant Lomax, Plaintiffs, for whatever reason(s), wanted Defendant Lomax's involvement in the purchase of the Property. *See* Ex. D, p. 48, ln. 1-3.

**C.**    **Defendant Lomax Assisted Plaintiffs with the Purchase of the Property**

Defendant Lomax thought that Plaintiffs' plan to purchase the Property from Raphael Hamilton was a "great idea" and that "it would be very easy" for Defendant Lomax to assist in

3

that transaction. *See* Ex. D, p. 52, ln. 23 – p. 53, ln. 24. Defendant Lomax was exclusively responsible for handling the "paperwork" for Plaintiffs' purchase of the Property. *See* Ex. D, p. 53, ln. 23-24; p. 56, ln. 12-18; p. 65, ln. 1-6. Apart from Plaintiffs' initial meeting with Defendant Lomax, Defendant Lomax and Plaintiffs never met at any time before closing, and in addition Defendant Lomax and Plaintiffs did not communicate at all between the initial meeting and closing. *See* Ex. D, p. 65, ln. 1-16.

**D.    Allegedly Questionable Practices of Defendant Lomax in Connection with Plaintiffs' Purchase of the Property**

Although Plaintiffs admit there was a July 31, 2006 "Agreement to Sell and to Buy Real Estate" (**"Agreement of Sale"**) (*see* Ex. C, AM0063-AN0067) in connection with their purchase of the Property from Raphael Hamilton, Plaintiff Maria Hamilton contended that 1) she did not recognize the Agreement of Sale, as it looked "foreign" to her; 2) the signature on the Agreement of Sale was not her signature; 3) Raphael Hamilton's signature on the Agreement of Sale was not his signature; and that 4) the timing of the Agreement of Sale did not make sense. *See* Ex. D, p. 54, ln. 1-2; p. 55, ln. 5 – p. 56, ln. 22.

Plaintiff Maria Hamilton further alleged that her signature was forged on other various correspondence as well as a Pre-Application Disclosure and Fee Agreement to Defendant Empire Mortgage Services Inc. that Defendant Lomax executed. *See* Ex. C, AM0126-0127, AM0220-0221; *see also* Ex. D, p. 59, ln. 1 – p. 62, ln. 12.

Significantly, Plaintiff Maria Hamilton testified that the only paperwork she received or read in connection with the Property was at closing:

> "[t]he only time I did paperwork with [Defendant] Lomax was on the day of closing. That was the first time I saw any paperwork, when the documents were placed in front of me at that time."

4

*See* Ex. D, p. 56, ln. 14-18.   In addition, Plaintiffs claim that they have never received any documents from anyone, including Defendant Lomax, prior to closing. *See* Ex. D, p. 63, ln. 20-24.

**E.     Defendant Lomax's Alleged Representations to Plaintiffs Concerning the Terms of the Loan**

According to Plaintiff Maria Hamilton, Defendant Lomax allegedly represented that he could provide Plaintiff Maria Hamilton with a mortgage whereby Plaintiff Maria Hamilton would make $1,500 monthly payments, with such a mortgage to carry interest at 8%. *See* Ex. D, p. 123, ln. 5-21.  Plaintiffs "expected to get the same deal, the same amount of purchase price, $1,500 a month mortgage payments, and whatever percentage [Raphael Hamilton's] mortgage was at the time." *See* Ex. D, p. 76, ln. 7-10.  Notably, Plaintiffs never received <u>any</u> kind of written document memorializing or confirming those alleged terms. *See* Ex. D, p. 77, ln. 6-10.

**F.     Closing on the Property**

The purchase price on the property was $248,000.  *See* Ex. C, AM0275.  Closing on the Property occurred on August 16, 2006, just one (1) week after Plaintiffs' initial and only meeting with Defendant Lomax. *See* Ex. D, p. 75, ln. 16-21; *see also* Ex. C, AM0275-0276.  At closing, the only individuals present were Raphael Hamilton, Plaintiffs, Defendant Lomax, and a representative from the title agency. *See* Ex. D, p. 73, ln. 13 – p. 74, ln. 10; *see also* Ex. E, p. 30, ln. 4-15.

According to Plaintiffs, Defendant Lomax explained at closing that the alleged "expected" terms had changed and that instead of $1,500 monthly payments carrying an 8% interest rate, the monthly payments would be $2,100 with an interest rate of 10.6%. *See* Ex. D, p. 79, ln. 4-11; p. 81, ln. 10-24.  Nevertheless, Plaintiffs conceded that <u>Defendant Lomax fully disclosed this information</u> to Plaintiffs <u>prior to any of the documents being executed</u>:

> "Q.     And did you learn this before you started singing
>          everything?
>
>  A.     Yes."

*See* Ex. D, p.. 79, ln. 17-19.  The "Borrower's Acknowledgment of Final Loan Terms", and a

"Payment Information" document, which Plaintiff Maria Hamilton both executed and signed,

unambiguously provide that the interest rate would be 10.6% and that monthly payments would

start at $2,172.76.  *See* Ex. C, AM0137, AM0148.  Other loan documents, such as the Adjustable

Rate Rider, clearly state that the "initial interest rate" would be 10.6%.  *See* Ex. C, AM0089-

0091.

Significantly, Plaintiffs <u>never</u> expressed any of their alleged concerns to Defendant

Lomax:

> "Q.     And did you voice those concerns to [Defendant] Lomax?
>          Did you say, 'wait a minute, [Defendant] Lomax, we had
>          an agreement here.  You are not following that agreement?'
>
>  A.     No, I didn't say that.
>
>  Q.     You didn't say anything?
>
>  A.     No.
>
>            *              *              *              *
>
>  Q.     Now, you didn't raise any concerns to [Defendant] Lomax.
>          Did anyone else from your family say anything to him
>          about this shift with respect to these items for your
>          mortgage and loan?
>
>  A.     No.  The only persons there were myself, my husband, and
>          my son from our family and, you know, we all knew we
>          were in a bad position.  So no, we didn't say anything.  My
>          husband didn't say anything, my son didn't say anything."

*See* Ex. D, p. 83, ln. 16 – p. 84, ln. 9.

According to Plaintiffs, Defendant Lomax "assured" Plaintiffs that they would be able to refinance shortly following settlement, but Defendant Lomax subsequently ignored Plaintiffs' requests to refinance. *See* Ex. D, p. 79, ln. 21 – p. 81 ln. 2; p. 95, ln. 2 – p. 96, ln. 17.

**G.     Plaintiffs' Inaction and Fraudulent Misconduct at Closing**

At closing, Plaintiffs did not review <u>any</u> of the loan/mortgage documents before Plaintiff Maria Hamilton signed all of the loan/mortgage documents:

> "Q.     Now, is it your testimony that you didn't receive any of these [loan/mortgage] documents prior to closing?
>
> A.     Yes.
>
> *                    *                    *                    *
>
> Q.     Did you review any of [the loan/mortgage documents] before you signed?
>
> A.     No.
>
> *                    *                    *                    *
>
> Q.     You didn't review anything prior to closing, correct?
>
> A.     No."
>
> *                    *                    *                    *
>
> Q.     And so, it's your testimony, and I think this will be my last question, but to sum it up, it's your testimony that prior to closing you were not given any documents regarding the mortgage, correct?
>
> A.     Correct.
>
> Q.     And it's your testimony that you showed up on August 16th, 2006 at the closing and you signed these documents without reading them, correct?
>
> A.     Correct."

*See* Ex. D, p. 151, ln. 13-15; 71, ln. 17-18; p. 73, ln. 5-7; p. 103, ln. 21 – p. 106, ln. 12; p. 169, ln. 16-24; p. 107, ln. 5-10.

Although Plaintiffs' decision to not read any of the documents at closing is symptomatic of Plaintiffs' nonfeasance, Plaintiffs affirmatively participated in the misrepresentation of their monthly incomes on their Uniform Residential Loan Application documents. Plaintiffs read, verified, and signed Uniform Residential Loan Application documents that indicated that Plaintiffs' monthly income was $10,000.00, even though that figure was false and had absolutely no factual basis whatsoever. *See* Ex. D, p. 69, ln. 4 – p. 71, ln. 1; *see also* Ex. C, AM0192. Another document executed by Plaintiff Maria Hamilton, entitled "Borrower's Certification of Income" (*see* Ex. C, AM0223), again reaffirmed the admittedly false monthly income figure of $10,000 and the admittedly false annual income figure of $120,000.00. *See* Ex. D, p. 97, ln. 15 – p. 98, ln. 10. In fact, at the time of closing, Plaintiff Maria Hamilton was unemployed. *See* Ex. D, p. 24, ln. 19 – p. 25, ln. 2.

**H.    Plaintiffs Admit that they Have Defaulted under the Mortgage and Loan Documents**

After closing, Plaintiffs assert that they made the first three (3) months' mortgage payments in full and on time. *See* Ex. D, p. 96, ln. 2-8. After allegedly making payments for the first three months, Plaintiffs admittedly began their repeated defaults under the mortgage and the loan documents. *See* Ex. D, p. 99, ln. 7 – p. 103, ln. 7. According to Plaintiff Maria Hamilton, Plaintiffs repeatedly missed multiple payments under the mortgage in 2008 and the last payment that she claims to have made under the mortgage "was some time – perhaps the end of [2008]." *See* Ex. D, p. 103, ln. 1-7; p. 100, ln. 24.

As a result of Plaintiffs' repeated defaults under the Mortgage, Plaintiffs filed for Chapter 13 bankruptcy on June 4, 2007, in Bankruptcy Petition No. 07-17761-GMB (the **"Bankruptcy**

Action"). *See* Ex. D, p. 11, ln. 21 – p. 12, ln. 3.  However, Plaintiffs failed to adhere to their bankruptcy plan and failed to tender the required payments for the Property while Plaintiffs were in bankruptcy, and as a result, Plaintiffs were dismissed from the Bankruptcy Action on September 3, 2009.  *See* Ex. D, p. 12, ln. 9-14; p. 164, ln. 2-13.  In addition, Plaintiffs readily admit that Plaintiff Maria Hamilton has defaulted on her mortgage:

> "Q.   Now, since you haven't maintained your mortgage payments, Ms. Hamilton, would you agree that you failed to fulfill the promises that are contained in your mortgage and note?
>
> A.   Yes."

*See* Ex. D, p. 166, ln. 4-8.  Plaintiff Maria Hamilton concedes that she is in default of her mortgage due to her failure to pay taxes and insurance, which even she recognizes is her obligation under the mortgage and loan documents.  *See* Ex. D, p. 165, ln. 1 – p. 166, ln. 3.

**I.     Plaintiffs Have Had Absolutely No Substantive Contact or Dealings with Defendant AMC Prior to Plaintiffs Filing the Instant Lawsuit**

Plaintiffs wholly concede that they have had no substantive contact or dealings whatsoever with Defendant AMC.  Apart from one (1) instance in which Plaintiff Maria Hamilton called Defendant AMC regarding the payment of a tax bill, Plaintiff Maria Hamilton has had no communication with Defendant AMC:

> "Q.   Have you had any other dealings, phone calls, meetings with anyone from any mortgage company in this case?
>
> A.   No.
>
> *                    *                    *                    *
>
> Q.   But you didn't have any dealings with [Defendant AMC] prior to or at closing, did you?
>
> A.   No."

9

*See* Ex. D, p. 111, ln. 17 – p. 112, ln. 13; p. 171, ln. 12-14.  In addition, Plaintiff Roy Hamilton admits that he has never spoken to anyone from Defendant AMC and that moreover, he never had any kind of communication whatsoever with Defendant AMC.  *See* Ex. E, p. 31, ln. 10-18. Both Plaintiffs testified and confirmed that no individual from Defendant AMC attended closing. *See* Ex. D, p. 172, ln. 16-17; *see also* Ex. E, p. 30, ln. 4-15.

After closing, Defendant AMC sold Plaintiff Maria Hamilton's mortgage.  *See* Ex. D, p. 160, ln. 17-23.

### III.  ARGUMENT

#### A.   Legal Standards for Motions for Summary Judgment

Fed.R.Civ.P. 56, entitled "Summary Judgment", provides in part that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c)(2).  Fed.R.Civ.P. 56 further provides that "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial."  Fed.R.Civ.P. 56(e)(2).

Summary judgment is "proper if, viewing the record in the light most favorable to the non-moving party and drawing all inferences in that party's favor, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  *U.S. ex rel. Kosenske v. Carlisle HMA, Inc.*, 554 F.3d 88, 94 (3d Cir. 2009).  "Summary judgment is not a disfavored procedural shortcut, but rather an essential thread in the fabric of the Federal Rules that eliminates unfounded claims without recourse to a costly and lengthy trial."  *Illingworth v.*

10

*Nestle U.S.A., Inc.*, 926 F.Supp. 482, 487 (D.N.J. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554-55 (1986)); *see also R.J. Longo Construction Co., Inc. v. Transit America, Inc.*, 921 F.Supp. 1295, 1303 (D.N.J. 1996).

"A party's failure to make a showing that is sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial mandates the entry of summary judgment." *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 857-58 (3d Cir. 2000) (citations, quotations omitted); *see also Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 806, 119 S.Ct. 1597, 1603 (1999); *New Jersey Automobile Ins. Plan v. Sciarra*, 103 F.Supp.2d 388, 419 (D.N.J. 1998). Also, "when the factual context renders a claim implausible, the non-movant has a heavier burden of production in opposing a motion for summary judgment." *Pitak v. Bell Atlantic Network Services, Inc.*, 928 F.Supp. 1354, 1366 (D.N.J. 1996).

Summary judgment is "particularly appropriate" where "the nonmoving party has presented no evidence or inferences that would allow a reasonable mind to rule in its favor." *Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 130 (3d Cir. 1998). "A genuine issue for trial does not exist unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *Oquendo v. Bettcher Industries, Inc.*, 939 F.Supp. 357, 361 (D.N.J. 1996), *aff'd*, 118 F.3d 1577 (1997) (citations, quotations omitted).

In particular, "[b]ecause a motion for summary judgment is designed to go beyond the pleadings", a plaintiff may not successfully oppose a summary judgment by merely resting on the allegations contained in the complaint. *Heffron v. Adamar of New Jersey, Inc.*, 270 F.Supp.2d 562, 574-75 (D.N.J. 2003). In addition, "a party will not be able to withstand a

motion for summary judgment merely by making allegations; rather, the party opposing the motion must go beyond its pleading and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial." *In re Ikon Office Solutions, Inc.*, 277 F.3d 658, 666 (3d Cir. 2002). *See also Tilden Financial Corp. v. Palo Tire Service, Inc.*, 596 F.2d 604, 607 (3d Cir. 1979) (more than mere allegations are necessary to defeat a properly supported motion for summary judgment); *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003) (a party opposing summary judgment must present affirmative evidence, whether direct or circumstantial, to defeat summary judgment); *Heffron v. Adamar of New Jersey, Inc.*, 270 F.Supp.2d 562, 574-75 (D.N.J. 2003) (to defeat a properly supported motion for summary judgment, a plaintiff cannot simply rely on vague, self-serving statements which are unsupported by specific facts in the record); *Kohn v. AT&T Corp.*, 58 F.Supp.2d 393, 410 (D.N.J. 1999) (mere reliance of conclusory arguments will not establish a genuine issue of material fact precluding summary judgment); *Ridgewood Bd. of Education v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999) (ambiguous allegations and vague inferences cannot defeat summary judgment).

"Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Ridgewood*, 172 F.3d at 252.

**B.   Plaintiff Roy Hamilton Does Not Have Standing in the Instant Lawsuit and at a Bare Minimum, Plaintiff Roy Hamilton Should Be Dismissed from this Action**

Because it is clear that Plaintiff Roy Hamilton does not have standing in the instant lawsuit since he is not a mortgagor, nor is he named in any of the loan documents, this Court

should – at a bare minimum – dismiss Plaintiff Roy Hamilton and any claims he alleges to assert in this action.

The issue of standing cannot be waived. *Pell v. E.I. DuPont de Nemours & Co. Inc.*, 539 F.3d 292, 299, n. 3 (3d Cir. 2008). When a court is addressed with the issuing of a party's standing, the "[p]laintiffs bear the burden of proving standing." *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 291 (3d Cir. 2005); *see also Berg v. Obama*, 586 F.3d 234, 238 (3d Cir. 2009). In addition, a party must demonstrate standing separately for each form of relief sought. *Toll Bros., Inc. v. Tp. of Readington*, 555 F.3d 131, 139, n. 5 (3d Cir. 2009). Standing is a threshold jurisdictional question that must be addressed prior to and independent of the merits of a party's claims. *Interfaith Community Org. v Honeywell Int'l, Inc.*, 399 F.3d 248, 254 (3d Cir. 2005), *cert. denied*, 545 U.S. 1129, 125 S.Ct. 2951 (2005). Standing must be maintained by plaintiffs during all stages of the proceeding. *Id.*

"Once the proceeding has reached the summary judgment stage, however, the plaintiff bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Coastal Outdoor Advertising Group, LLC v. Tp. of Union*, --- F.Supp.2d ----, 2009 WL 5158439, at *4 (D.N.J. 2009) (quotations omitted) (citing *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996) and *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130 (1992)).

Essentially, the issue of standing dictates that "[i]t is fundamental that one without interest in the subject matter of a law suit has no legal standing to prosecute it." *Sharp & Dohme v. U.S.*, 144 F.2d 456, 458 (3d Cir. 1944).

13

Plaintiff Roy Hamilton is not a mortgagor, and is not named or included in any of the loan documents:

> "Q.    It's solely your wife that is on the mortgage documents here; is that correct?
>
> A.    Yes."

*See* Ex. E, p. 12, ln. 16-18.  Plaintiffs designated Plaintiff Maria Hamilton as the sole mortgagor for the Property to leave open the possibility for Plaintiff Roy Hamilton to purchase additional real estate. *See* Ex. E, p. 12, ln. 19 – p. 13, ln. 4.

As the caselaw above mandates, at this stage of the litigation, Plaintiff Roy Hamilton has the burden of establishing his standing in the instant matter with respect to the TILA and/or RESPA claims asserted against Defendant AMC.  Because Plaintiff Roy Hamilton is not a mortgagor, and is not named or included in any of the loan documents, Plaintiff Roy Hamilton cannot establish any standing in the instant matter.  Accordingly, because Plaintiff Maria Hamilton is the only appropriate plaintiff in this matter, and Plaintiff Roy Hamilton has been improperly named, this Court should, at the very least, dismiss Plaintiff Roy Hamilton due to his lack of standing.

## C.    Plaintiffs' Claims Against Defendant AMC Fail as a Matter of Law Because Defendant AMC Was Not an Agent of Defendant Lomax

Plaintiffs' theory of Defendant AMC's liability on this matter is wholly connected to an allegation that Defendant Lomax was an agent of Defendant AMC (as well as other Defendants) and that the wrongdoing of Defendant Lomax should be imputed to Defendant AMC.  Because it is clear that there was no agency relationship between Defendant AMC and Defendant Lomax, Plaintiffs cannot meet their burden of establishing any kind of agency relationship, and Plaintiffs' claims against Defendant AMC fail as a matter of law.

14

Under New Jersey law, "[a]n agency relationship arises when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." *Seltzer v. I.C. Optics, Ltd.*, 339 F.Supp.2d 601, 609 (D.N.J. 2004) (citations, quotations omitted); *see also Sylvan Learning Systems, Inc. v. Gordon*, 135 F.Supp.2d 529, 542 (D.N.J. 2000) (under New Jersey law, an agency relationship arises when one party authorizes another to act on its behalf while retaining the right to control and direct any such acts). In particular, "[a]n agent must have authority to act for the principal." *Gordon*, 135 F.Supp.2d at 542.

In New Jersey, a "party seeking to impose liability upon an alleged principal must assume the obligation and burden of proving the existence of an agency relationship." *N. Rothenberg & Son, Inc. v. Nako*, 49 N.J. Super. 372, 383, 139 A.2d 783, 789 (1958) (citing *Hoddeson v. Koos Bros.*, 47 N.J. Super. 224, 231, 135 A.2d 702, 706 (1957)); *see also Mutual Ben. Life Ins. Co. v. Zimmerman*, 783 F.Supp. 853, 866 (D.N.J. 1992), *aff'd*, 970 F.2d 899 (3d Cir. 1992). As the *Hoddeson* Court determined, "[i]t is not the burden of the alleged principle to disprove" an alleged agency relationship. 47 N.J. Super. at 231-232, 135 A.2d at 706.

Plaintiffs cannot identify any basis of an alleged agency relationship between Defendant Lomax and Defendant AMC. The only "evidence" Plaintiffs cite as to this alleged agency relationship are Plaintiffs' "assumption[s]", which is devoid of any factual basis:

> "Q.    And what is your basis for saying that Defendant [Lomax] was a representative of [Defendant AMC]?
>
> A.    It is my assumption."

*See* Ex. E, p. 43, ln. 6-8.

In a recent case, the U.S. District Court for the Eastern District of Pennsylvania in *Hawthorne v. American Mortgage, Inc.*, 489 F.Supp.2d 480 (E.D. Pa. 2007), held that a mortgage broker, under similar circumstances, was not the agent of the lender. In *Hawthorne*,

15

the Court determined, at the summary judgment stage, that because "there is no genuine issue of material fact that American Mortgage was not acting as Countrywide's agent in its role as mortgage broker for the Hawthornes, none of American Mortgage's conduct can be attributed to Countrywide." *Id.* at 484.

In rejecting every effort by the plaintiffs to try to establish an agency relationship, the Court concluded that "Countrywide's policy of relying on brokers to communicate with borrowers does not make those brokers Countrywide's agents. The Hawthornes cite no authority to the contrary." *Id.* at 485. The Court concluded that the Hawthornes could not create any genuine issue of material fact that American Mortgage was acting as Countrywide's agent, and awarded summary judgment in favor of Countrywide and dismissed the plaintiffs' claims. *Id.*

Here, Plaintiffs have failed to produce any evidence to suggest that Plaintiffs' mortgage broker, Defendant Lomax, was an agent of Defendant AMC. Defendant AMC is not directly liable for the alleged fraud or misconduct of Defendant Lomax. Defendant AMC is also not vicariously liable for the acts of Defendant Lomax.

The deposition testimony elicited and the allegations in Plaintiffs' Complaint contend that Defendant Lomax misrepresented certain items to Plaintiffs, and that Defendant AMC is liable to Plaintiffs due to this alleged agency relationship. *See* Ex. A, ¶¶ 14, 15, 17. At this summary judgment stage, Plaintiffs have not taken any depositions in support of these claims, and none of the documents produced by any of the parties even remotely suggests any kind of agency relationship between Defendant Lomax and Defendant AMC. The undisputed facts reveal that Plaintiffs' theories of recovery are that the alleged wrongdoing of Defendant Lomax should be attributed to Defendant AMC. Plaintiffs have completely failed to meet their burden

of proving the existence of an agency relationship, and consequently, Plaintiffs' claims against Defendant AMC should be dismissed with prejudice.

**D.    Defendant AMC Cannot Be Liable for any Alleged Failure to Disclose when Plaintiff Maria Hamilton Elected not to Read, but nonetheless Signed, all of the Loan Documents**

Plaintiff Maria Hamilton admitted she did not read <u>any</u> of the documents prior to closing or <u>any</u> of the documents at closing.  Since a party, like Plaintiff Maria Hamilton, who chooses not to read a contract before executing a contract cannot subsequently avoid any obligations under the contract, Plaintiff Maria Hamilton is responsible for all of the obligations under the loan documents.  Because Plaintiff Maria Hamilton did not read any of the documents, Defendant AMC cannot be liable for any alleged failure to disclose even assuming arguendo that there were any inaccurate disclosures (and Defendant AMC expressly denies any wrongdoing with respect to any aspect of the disclosures, for the multiple reasons outlined below).

A party "who does not choose to read a contract before signing it cannot later relieve himself of its burdens." *Riverside Chiropractic Group v. Mercury Ins. Co.*, 404 N.J. Super. 228, 238, 961 A.2d 21, 27 (2008) (citing *Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 386, 161 A.2d 69, 84 (1960)).  Additionally, "a person who signs a contract cannot avoid his obligations under it by showing that he did not read what he signed." *Sarbak v. Citigroup Global Markets, Inc.*, 354 F.Supp.2d 531, 541 (D.N.J. 2004).  "When one contracts with another, the contracting parties may have an obligation to read the contract because if they assent without so doing, they cannot later assert that their agreement was different from that expressed in writing." *Aden v. Fortsch*, 169 N.J. 64, 86, 776 A.2d 792, 805 (2001).

Under New Jersey law, "it is well settled that affixing a signature to a contract creates a conclusive presumption that the signer read, understood, and assented to its terms." *Greenfield*

*v. Twin Vision Graphics, Inc.*, 268 F.Supp.2d 358, 373-74 (D.N.J. 2003) (citing *Fleming Cos., Inc. v. Thriftway Medford Lakes, Inc.*, 913 F.Supp. 837, 843 (D.N.J. 1995)); *see also Raiczyk v. Ocean County Veterinary Hosp.*, 377 F.3d 266, 270 (3d Cir. 2004) ("it is well settled that signing a contract creates a conclusive presumption that the signer read, understood, and assented to its terms") (citations, quotations omitted).

Simply because a party does not read a contract does not excuse that party of the obligations of a contract. "A failure to read a contract will not excuse a party who signs it, nor will the party's ignorance of its obligation." *Park Inn Int'l, L.L.C. v. Mody Enterprises, Inc.*, 105 F.Supp.2d 370, 374 (D.N.J. 2000). The *Park Inn* Court further explained that "[f]ailure to explain the terms of an agreement does not constitute fraud, overreaching or unconscionability". *Id.* Under New Jersey law, in the event that any kind of oral understanding is not properly memorialized in a writing, "failure to read the agreement is no defense." *Berman v. Gurwicz*, 178 N.J. Super. 611, 618, 429 A.2d 1084, 1088 (1981).

"The law assists those who are vigilant, not those who sleep upon their rights." *State v. Volpini*, 291 N.J. Super. 401, 416, 677 A.2d 780, 788 (1996); *see also Yager v. American Life Ins. Ass'n*, 44 N.J. Super. 575, 581-82, 131 A.2d 312, 316 (1957) (courts are disinclined to enforce the performance of futile acts, useless things, and idle formalities); *Abdallah v. Abdallah*, 359 F.2d 170, 175 (3d Cir. 1966) (law does not require the doing of a vain or futile thing).

Additionally, under New Jersey law, "when the terms of a contract are clear, it is the function of a court to enforce it as written and not to make a better contract for either of the parties because the parties are entitled to make their own contracts." *Westmont Development Group, LLC v. Tp. of Haddon*, 625 F.Supp.2d 178, 190 (D.N.J. 2009); *see also In re Cendant Corp. Securities Litigation*, 569 F.Supp.2d 440, 443 (D.N.J. 2008) ("where the terms of a

18

contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written"); *Powell v. Alemaz, Inc.*, 335 N.J.Super. 33, 44, 760 A.2d 1141, 1147 (2000) ("[a] court cannot rewrite the contract for the parties"); *Assisted Living Associates of Moorestown, L.L.P. v. Moorestown Tp.*, 31 F.Supp.2d 389, 398 (D.N.J. 1998) ("[n]or may the courts remake a contract better than the parties themselves have seen fit to enter into, or alter it for the benefit of one party to the detriment of the other") (citations, quotations omitted).

Because Plaintiff Maria Hamilton affirmatively chose to disregard reading any of the documents, Defendant AMC cannot be liable for any alleged failure to disclose even assuming arguendo that there were any inaccurate or incomplete disclosures. Plaintiffs' claims against Defendant AMC fail as a matter of law.

**E.    Plaintiffs Had Absolutely No Communications with Defendant AMC, and Accordingly Cannot Be Liable**

Because Plaintiffs and Defendant AMC had no communications whatsoever, Defendant AMC cannot be liable for any alleged failure to disclose any items, nor can Defendant AMC be liable for any representations or misrepresentations of Defendant Lomax to Plaintiffs. *See* Ex. A, ¶62.

Plaintiffs repeatedly conceded at their depositions that they have had no substantive contact or dealings whatsoever with Defendant AMC. *See* Ex. D, p. 111, ln. 17 – p. 112, ln. 13; p. 171, ln. 12-14; p. 172, ln. 16-17; *see also* Ex. E, p. 30, ln. 4-15; p. 31, ln. 10-18. Because it is clear that Defendant Lomax was not in any way an agent of Defendant AMC, there is no possible manner in which Defendant AMC can be liable for any alleged failure of Defendant Lomax to disclose information to Plaintiffs or for any misrepresentations of Defendant Lomax to Plaintiffs. *See* Ex. A, ¶¶ 65, 66, 70.

19

Defendant AMC cannot be liable for any alleged failure to disclose any items due to the fact that Plaintiffs and Defendant AMC had no communications, nor can Defendant AMC be liable for any representations or misrepresentations of Defendant Lomax to Plaintiffs. *See* Ex. A, ¶62. Consequently, all of Plaintiffs' claims against Defendant AMC should be dismissed with prejudice.

**F.    The Allegedly Improper Disclosures, Which Plaintiff Maria Hamilton Has Never Read, Are Not Deficient or Improper in any Respect, and to the Contrary, Plaintiff Maria Hamilton Received Complete and Accurate Disclosures under TILA**

**1.    The Disclosures Were Accurate as a Matter of Law and Plaintiffs' TILA Claim Fails as a Matter of Law**

The disclosures Plaintiff Maria Hamilton received were materially accurate as a matter of law, and Plaintiffs' TILA claim – which was clearly asserted prior to any examination of the loan documents – should be dismissed with prejudice as to Defendant AMC.

Plaintiffs claim that Defendant AMC "failed to deliver all 'material' disclosures required by TILA and Regulation Z". *See* Ex. A, ¶66. In particular, Plaintiffs allege that Defendants failed to disclose the amount financed, finance charges, annual percentage rate, special disclosure requirements of Regulation Z, and provide requisite disclosures. *See* Ex. A, ¶66(a)-(e). Such bald allegations are flatly contradicted by the undisputed documentary evidence.

TILA requires a lender to disclose the amount of the finance charge imposed on any loan. *See* 15 U.S.C. §1640. Where, as here, it can be ascertained that the finance charge is materially accurate as a matter of law under TILA, summary judgment for the lender is warranted. *See Ricciardi v. Ameriquest Mortgage Co.*, 164 Fed.Appx. 221, 224-25 (3d Cir. 2006).

Section 1605 of TILA, entitled "Determination of finance charge," enumerates the kinds of charges included in the finance charge:

20

"(a)    'Finance charge' defined.   Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. . . .   The finance charge shall not include fees and amounts imposed by third party closing agents (including settlement agents, attorneys, and escrow and title companies) if the creditor does not require the imposition of the charges or the services provided and does not retain the charges.   Examples of charges which are included in the finance charge include any of the following types of charges which are applicable:

(1) Interest, time price differential, and any amount payable under a point, discount, or other system of additional charges.

(2) Service or carrying charge.

(3) Loan fee, finder's fee, or similar charge.

(4) Fee for an investigation or credit report.

(5) Premium or other charge for any guarantee or insurance protecting the creditor against the obligor's default or other credit loss.

(6) Borrower-paid mortgage broker fees, including fees paid directly to the broker or the lender (for delivery to the broker) whether such fees are paid in cash or financed."

15 U.S.C. §1605(a).

As detailed below, it is clear as a matter of law that the amount calculated on both the TILA Disclosure Statement and the Settlement Statement (both of which were signed and executed by Plaintiff Maria Hamilton at closing) accurately and fully disclosed all "finance charges" within the meaning of TILA, as well as all other costs and fees that were paid from the proceeds of the mortgage.

The TILA Disclosure Statement, signed and executed by Plaintiff Maria Hamilton at closing, and under the statement that "I acknowledge reading and receiving a complete copy of this disclosure" unambiguously details and defines the annual percentage rate; finance charges;

21

the amount financed; the total dollar number of payments; the number of payments; the amount of payments; the due date for payments; that the loan would have a variable rate feature; that Plaintiff Maria Hamilton was giving a security interest in the Property; that late charges would be assessed at 5% of the overdue payment; and that there would be no prepayment penalty. *See* Ex. C, AM0274; *see also* Ex. D., p. 168, ln. 18 – p. 169, ln. 8.

As the documents indisputably demonstrate, the disclosures provided to Plaintiff Maria Hamilton are accurate. Also, Defendant AMC did not make any representations to Plaintiff Maria Hamilton prior to closing and Plaintiff Maria Hamilton did not justifiably rely on any alleged pre-closing misrepresentations, since the written loan documents which Plaintiff Maria Hamilton signed at the loan closing contain the final terms of her mortgage loan. Plaintiff's entire case is based on statements that Defendant Lomax made regarding the alleged loan terms. Such an allegation does not support any claims against Defendant AMC.

As an example of the documents supplied to Plaintiff Maria Hamilton at closing, under "IMPORTANT NOTICE TO BORROWER(S)", which was executed and signed by Plaintiff Maria Hamilton at closing, that Notice indicates:

> "Oral agreements, promises or commitments to lend money, extend credit, or forebear from enforcing repayments of a debt, including promises to extend, modify, renew, or waive such debt, are not enforceable.
>
> To protect you (Borrower(s)) and us (Lender) from misunderstandings or disappointments, any agreements we have reached covering this loan transaction are contained in the loan documents you have signed today. Your loan documents are the complete statement of the loan agreement reached between us. Any subsequent agreement between us regarding the loan transaction must also be a signed writing to be legally enforceable.
>
> BY SIGNING BELOW, YOU (BORROWER(S)) HEREBY ACKNOWEDGE:

> (1) You have been given an opportunity to read your loan documents, have read them, and fully understand the terms of this loan transaction; and

> (2) You have received a full and complete set of all the loan documents you have signed with this transaction, including a copy of this notice."

*See* Ex. C, AM0147.

Thus, Plaintiffs' repeated and bald contentions in the Complaint regarding a failure to disclose are clearly unsupported by the loan documents. It is clear that Plaintiff's boilerplate and bald allegations in the Complaint have been completely and unmistakably refuted.

Plaintiff Maria Hamilton's execution of the TILA Disclosure Statement creates a presumption that those disclosures were in fact received and any allegation in the Complaint by Plaintiffs to the contrary is not, by itself, sufficient to rebut that presumption. Instead, Plaintiff Maria Hamilton admits that she received these documents, but did not read them. Express acknowledgement of receipt creates a "rebuttable presumption" of receipt which cannot be rebutted by any testimony. *Jobe v. Argent Mortgage Co.*, 2009 WL 2461168, at *4 (M.D. Pa. 2009) (citing 15 U.S.C. §1635(c)); *see also Oscar v. Bank One, N.A.*, 2006 WL 401853, at *3 (E.D. Pa. 2006). Section 1635(c) of TILA contains a rebuttable presumption of delivery of the disclosures when there exists a "written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given." 15 U.S.C. § 1635(c).

In fact, any claim by Plaintiffs that they did not receive the requisite disclosures are completely belied by the actual loan documents. As just a small example, among the disclosures which Plaintiff Maria Hamilton "acknowledged" receiving, and in fact signed such documents, include a "RESPA SERVICING DISCLOSURE" (*see* Ex. C, AM0145); a "NEW JERSEY

PROPERTIES – RIGHT TO OWN ATTORNEY DISCLSOURE" (*see* Ex. C, AM0158); a charges statement plainly setting forth her monthly payments, interest rate, and fees associated with the mortgage loan (*see* Ex. C, AM0161). Additionally, the Settlement Statement at closing clearly identifies all charges that were made in connection or taken from the proceeds of the loan. *See* Ex. C, AM0275-0276.

The documents provided to Plaintiffs were clear and in compliance with all applicable laws. Defendant AMC should not be responsible for Plaintiffs' election to not read any of these documents or for any confusion between Defendant Lomax and Plaintiffs as to the terms of the loan. Plaintiffs' claims fail because all items disclosed were accurate. Simply because Plaintiffs alleged that Defendant Lomax promised otherwise does not make the disclosures themselves inaccurate in any respect.

If there is any fraud or wrongdoing in this matter, it was committed by Plaintiff Maria Hamilton herself. Plaintiff Maria Hamilton acknowledged the accuracy of her own income statement, signed each of the aforesaid documents acknowledging her income and submitted such documents for the purpose of obtaining cash. It is Defendant AMC who relied upon Plaintiff Maria Hamilton's loan application and income statements in providing Plaintiff Maria Hamilton with the mortgage loan and disbursing $235,600 on Plaintiff Maria Hamilton's behalf. *See* Ex. C, AM0275. Even Plaintiff Maria Hamilton acknowledged that her monthly income statements which she signed are completely inaccurate and had no factual basis whatsoever. *See* Ex. D, p. 69, ln. 4 – p. 71, ln. 1; p. 97, ln. 15 – p. 98, ln. 10.

In sum, the disclosures to Plaintiff Maria Hamilton were materially accurate as a matter of law by a plain reading of TILA. Thus, Defendant AMC is entitled to summary judgment as to Plaintiffs' unsupportable TILA claim.

**2.    Defendant AMC Is not Subject to Liability under HOEPA because the Fees Assessed Did not Come Close to Exceeding the HOEPA Threshold**

Plaintiffs contend that Defendant AMC is subject to liability under HOEPA because "the total points and fees Defendants charged Plaintiff, in addition to interest, exceeded eight percent of the total loan amount or in that the APR trigger pursuant to HOEPA was met with respect to this transaction." *See* Ex. A, ¶68.   Consistent with Plaintiffs' other baseless allegations, Plaintiffs' claim has no merit and is flatly contradicted by the loan documents.

As an initial matter, contrary to Plaintiffs' assertion, 12 C.F.R. §226.32(b)(1) specifically excludes "interest" from determining the amount of points and fees associated with a loan. HOEPA, codified at 15 U.S.C. §1639 *et seq.*,[2] imposes additional disclosure requirements for certain "high cost" mortgage loans falling within the purview of §1602(aa), which are defined as:

> "(aa)(1) a consumer credit transaction that is secured by the consumer's principal dwelling . . . if – (A) the annual percentage rate at the consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor; or (B) the <u>total</u>

---

[2] Section 1639 provides, in pertinent part:

> "§ 1639. Requirements for certain mortgages
>
> (a)  Disclosures.
>
>    *              *              *              *
>
>    (2) Annual percentage rate. In addition to the disclosures required under paragraph (1), the creditor shall disclose—
>
>       (A) in the case of a credit transaction with a fixed rate of interest, the annual percentage rate and the amount of the regular monthly payment; or
>
>       (B) in the case of any other credit transaction, the annual percentage rate of the loan, the amount of the regular monthly payment, a statement that the interest rate and monthly payment may increase, and the amount of the maximum monthly payment . . . ."

15 U.S.C. § 1639(a).

> points and fees payable by the consumer at or before the closing
> will exceed the greater of – (i) 8 percent of the total loan amount;
> or (ii) $400."

15 U.S.C. §1602(aa)(1)(A-B) (emphasis added).[3]

Plaintiffs have alleged that Defendant AMC is liable under HOEPA because the "[l]oan was a high rate mortgage within the meaning of 15 U.S.C. §1602(aa)(1)(B), in that the total points and fees Defendants charged Plaintiff, in addition to interest, exceeded eight percent of the total loan amount". *See* Ex. A, ¶68. Once again, the actual loan documents directly contradict Plaintiffs' claims. Plaintiff Maria Hamilton acknowledged and signed a document relating to payments, fees, and charges which clearly outlined:

> "You will be charged a total of $7,590.72 in fees to obtain this
> mortgage loan. Theses fees include $2,093.72 paid to us,
> $2,956.00 paid to your mortgage broker, and $2,541.00 which will
> be paid to others for services or fees charged in connection with
> your loan. In addition, we will pay your mortgage broker
> $4,712.00."

*See* Ex. C, AM0161.

The loan was in the amount of $235,600, so in order to exceed the 8% threshold, those fees would have had to have exceeded $18,848. Since the $7,590.72 amount in fees assessed only amounts to <u>3.22%</u> of the loan amount, Plaintiffs' allegations and calculations are clearly erroneous. This serves as yet another ground for this Court to completely dismiss Plaintiffs' unjustifiable TILA claim against Defendant AMC.

---

[3] "Points and fees" are defined by §226.32(b)(1)("Regulation Z") to include the following:

(i)     All items required to be disclosed under §226.4(a) and 226.4(b) [i.e., the "finance charge"];
(ii)    All compensation paid to mortgage brokers;
(iii)   All items listed in §226.4(c)(7)(other than amounts held for future payment of taxes) unless the charge
        is reasonable [and] the charge is not paid to an affiliate of the creditor; and
(iv)    Premiums, or other charges for credit life, accident, health, or loss of income insurance . . . .

12 C.F.R. §226.32(b)(1); *see also* 15 U.S.C. §1602 (aa)(4).

**G.      Plaintiffs Claim under RESPA Fails as a Matter of Law**

Plaintiffs only allege two (2) paragraphs in support of their claim under RESPA.

Plaintiffs' pleading of the RESPA claim is limited to the following:

> "72.    Plaintiffs' loan was a federally related consumer mortgage loan as defined by RESPA, 12 U.S.C. §2602, which Defendants are in violation thereof at all times material, including but not limited to the pre-paid finance charges paid by Plaintiffs is believed neither properly disclosed nor *bona fide* and *reasonable* under TILA/HOPEA, thus "fee splitting," a violation(s) herein, to which Plaintiffs are entitled to recoupment and relief under the CFA.

> 73.    To the extent a request has not been previously made by Plaintiffs, Plaintiffs here serve a Qualified Written Request ("QWR") for a full accounting requiring specific itemization and enumeration of all charges as well as the dates thereof alleged cumulatively now owned by Plaintiffs under the loan and to correct those charges and that amount consistent with the above defect. The failure to timely acknowledge this QWR or a prior QWR, provide the requested accounting, and correct the defects here alleged constitutes an additional RESPA violation(s).  12 U.S.C. §2605."

*See* Ex. A, ¶¶ 72, 73.

RESPA requires mortgage servicers who receive QWRs for action or information from a borrower to take corrective action or to provide a written explanation of why the servicer believes the account is accurate or the information requested is unavailable. 12 U.S.C. §2605(e). RESPA mandates certain timing deadlines on responses to QWRs, including the duty to provide a final response in 60 days. *Id.* Plaintiffs do not specifically allege that they sent a QWR to any party.  RESPA sets forth specific detailed requirements before a communication from a borrower will qualify as a QWR, defining that term as:

> "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that -

> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."

12 U.S.C. §2605(e)(1)(B). Here, Plaintiffs neither allege any facts demonstrating that they presented a QWR nor did they attach a copy of any QWR that they allegedly sent. The record is devoid of any evidence that the Plaintiffs served any Defendant in this matter with a QWR.

Plaintiffs allege that all Defendants are liable under RESPA because the Plaintiffs incurred "pre-paid finance charges". *See* Ex. A, ¶72. However, there is no evidence in the record that provides any support to this blanket and vague allegation. None of the loan documents demonstrate that Plaintiffs incurred any improper or unlawful pre-paid finance charges.

In addition, Plaintiffs improperly purported to use their Complaint as a QWR. It is inappropriate for a Complaint to serve as a QWR. *See Delino v. Platinum Community Bank*, 628 F.Supp.2d 1226, 1232 (S.D. Cal. 2009) (concluding that plaintiff failed to state a cause of action under RESPA because a Complaint could not serve as a QWR).

Accordingly, since Plaintiffs' RESPA claim is devoid of any evidence and is legally deficient, and what little Plaintiffs actually pled in this claim reference Plaintiffs' legally indefensible TILA claim, this Court should dismiss with prejudice Count II of the Complaint as to Defendant AMC.

**H.    Plaintiffs Have Not Produced or Identified any Evidence in Discovery to Support Their Claims and with Discovery Now Completed, Plaintiffs Have Not and Cannot Identify any Alleged Wrongdoing from Defendant AMC**

When asked specifically what Defendant AMC allegedly "did improper in this suit such that [Plaintiffs have] named them as a Defendant", Plaintiffs only responded that "perhaps" Defendant AMC "didn't do due diligence" in Defendant AMC's approval of Plaintiff Maria Hamilton's loan:

> "Q.    Specifically with [Defendant AMC], what are you claiming that they did improper in this suit such that you've named them as a Defendant?
>
> [Plaintiffs' counsel]. Same objection.  You can answer.
>
> A.    Well, being that they were the mortgage company at the time that, you know, issued the mortgage through the broker or, you know, through [Defendant] Lomax, that perhaps they didn't do due diligence in approving the loan to me through [Defendant] Lomax.
>
> Q.    Any other basis for why [Defendant AMC] has been named here?
>
> A.    No."

*See* Ex. D, p. 147, ln. 1-18.

When asked the same question as to what his "basis for bringing [Defendant AMC]" into this lawsuit, Plaintiff Roy Hamilton's only response was that:

> "[Defendant AMC] would be our -- at the time our mortgage holder.  Whatever relation [Defendant AMC] had with [Defendant] Lomax is -- I have no idea, beside the mortgage lender.

*See* Ex. E, p. 23, ln. 8-20.

When Plaintiffs can only allege that "perhaps [Defendant AMC] didn't do due diligence in approving [Plaintiff Maria Hamilton's] loan", when Plaintiffs fraudulently indicated that their income was $120,000 per year (when Plaintiffs' tax returns indicate that Plaintiffs adjusted gross

29

income was $10,249 in 2007 and $11,738 in 2008 (attached collectively hereto as **Exhibit "F"** and incorporated herein by reference)), it is readily apparent that Plaintiffs have no meritorious claims against Defendant AMC whatsoever and that Defendant AMC's instant Motion should be granted.

Although this action has been pending for well over one (1) year, and the discovery period ended on February 1, 2010, Plaintiffs have failed to undertake any discovery in support of their claims.   Plaintiffs have not (1) propounded any interrogatories; (2) propounded any document requests; (3) propounded any requests for admissions; (4) subpoenaed any records from third parties; or (5) conducted depositions of any individuals.

Notably, when Plaintiffs were asked by Defendant AMC to "[s]et forth all facts and identify all documents which support or refute your contention that Defendant AMC violated the Truth-in-Lending Act/Home Ownership and Equity Protection Act in Count I of your Complaint" and to "[s]et forth all facts and identify all documents which support or refute your contention that Defendant AMC violated the Real Estate Settlement Procedures Act in Count II of your Complaint", Plaintiffs only response to both Interrogatories was: "See Complaint.  By way of further response, [Defendant] AMC is a successor in interest to Argent and violations were apparent on face of papers." *See* "Plaintiffs' Responses to Defendant's Argent Mortgage Co., LLC, Interrogatories", ¶¶ 15, 16, attached hereto as **Exhibit "G"** and incorporated herein by reference.

It is entirely transparent that Plaintiffs filed these unmeritorious claims in the instant lawsuit as a preemptive, offensive measure when they realized that they had fallen incredibly behind on their mortgage payments.  With discovery completed, Plaintiffs are at this stage left with bald accusations that have been flatly contradicted by the loan documents together with no

30

discovery in support of their baseless claims.  Because Plaintiffs have completely and utterly: (1) failed to bear their burden of proof (*Watson*, 235 F.3d at 857-58); (2) "presented no evidence or inferences that would allow a reasonable mind to rule in its favor" (*Schoonejongen*, 143 F.3d at 130); (3) merely relied on the now refuted allegations in the Complaint (*Heffron*, 270 F.Supp.2d at 574-75); and 4) have not gone "beyond its pleading and designate[d] specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial" (*In re Ikon Office Solutions, Inc.*, 277 F.3d at 666), summary judgment as to Defendant AMC is warranted.

## IV.    CONCLUSION

For all of the foregoing reasons, Defendant Argent Mortgage Company, LLC, respectfully requests that the Court grant Defendant Argent Mortgage Company, LLC's Motion for Summary Judgment and dismiss the Complaint in its entirety against Defendant Argent Mortgage Company, LLC.

Respectfully submitted,

**KAPLIN STEWART MELOFF REITER & STEIN, P.C.**

**By:    /s/ Parker V. Sherry**

MICHAEL P. COUGHLIN, ESQUIRE
PARKER V. SHERRY, ESQUIRE
Union Meeting Corporate Center
910 Harvest Drive
Blue Bell, PA  19422
Telephone:  (610) 941-2470
Facsimile:  (610) 684-2033
mcoughlin@kaplaw.com
psherry@kaplaw.com
Attorneys for Defendant Argent Mortgage Company, LLC

**Dated:  March 4, 2010**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of "Defendant Argent Mortgage Company, LLC's Motion for Summary Judgment", together with a Notice of Motion, Memorandum of Law in support thereof and a "Statement of Material Facts Not in Dispute", was caused to be served electronically by the undersigned, on the date stated below, to the addressees stated below and at the addresses stated below:

Matthew B. Weisberg, Esquire
Prochniak Weisberg, P.C.
7 South Morton Avenue
Morton, PA 19070

Amy J. Roy, Esquire
Eckert, Seamans, Cherin & Mellott, LLC
600 Grant Street
44th Floor
Pittsburgh, PA 15219

**KAPLIN STEWART MELOFF REITER & STEIN, P.C.**

By:    **/s/ Parker V. Sherry**
PARKER V. SHERRY, ESQUIRE
Attorneys for Defendant Argent Mortgage Company, LLC

**Dated:  March 4, 2010**