IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIA and ROY HAMILTON<br>             Plaintiffs<br><br>v.<br><br>ARGENT MORTGAGE<br>COMPANY, LLC et al.<br>             Defendants | CIVIL ACTION<br><br><br><br>NO. 1:08-cv-06370-RMB-AMD |

## DEFENDANT ARGENT MORTGAGE COMPANY, LLC'S
## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Pursuant to Federal Rule of Civil Procedure ("**Fed.R.Civ.P.**") 56 and Local Civil Rule ("**L.Civ.R.**") 56.1, Defendant Argent Mortgage Company, LLC ("**Defendant AMC**"), by and through its counsel, submits the following statement of material facts not in dispute:

1. On December 29, 2008, Plaintiffs Maria and Roy Hamilton commenced an action in the United States District Court for the District of New Jersey by filing a Complaint against Defendants AMC, Empire Mortgage Services, Inc., Joe Lomax d/b/a Empire Mortgage Services Inc. ("**Defendant Lomax**"), Select Portfolio Servicing, Inc., U.S. Bank and John Does 1 – 10. *See* Defendant AMC's Memorandum of Law in Support of Its Motion for Summary Judgment ("**Defendant AMC's Brief**"), Exhibit "A".

2. Defendants Empire Mortgage Services, Inc. and Defendant Lomax have been served but have not had any attorney(s) enter their appearance on their behalf in this matter, nor have those parties participated in any of the proceedings to date.

3. On August 28, 2009, Defendant AMC filed an Answer to the Complaint. *See* Defendant AMC's Brief, Exhibit "B".

1

4. The Complaint contains the following four (4) counts: Count I – Truth in Lending Act ("TILA")/Home Ownership and Equity Protection Act ("HOEPA"); Count II – Real Estate Settlement Procedures Act ("RESPA"); Count III – New Jersey Consumer Fraud Act and Count IV – Fraudulent Misrepresentation (incorrectly identified as Count V in the Complaint).

5. The Complaint asserts claims against the Defendant AMC for alleged violations of TILA/HOEPA and RESPA.

6. On or about July 6, 2006, Plaintiffs' son, Raphael Hamilton, purchased certain real property located at 5926 Clover Leaf Drive, Mays Landing, New Jersey (the **"Property"**). *See* certain documents produced in discovery, identified as AM0561-62, and attached to Defendant AMC's Brief, Exhibit "C"; *see also* October 7, 2009 Deposition of Plaintiff Maria Hamilton, p. 30, ln. 22 – p. 31, ln. 2, attached to Defendant AMC's Brief as Exhibit "D".

7. Immediately after purchasing the Property, Raphael Hamilton had difficulties making timely mortgage payments. *See* Defendant AMC's Brief, Ex. D, p., 50, ln. 12 – p. 51, ln. 17.

8. As a result of Raphael Hamilton's difficulties in making mortgage payments for the Property, Plaintiffs concocted a plan whereby Plaintiffs would purchase the Property from Raphael Hamilton and move from California to New Jersey so that they could live in the Property with Raphael Hamilton and another of Plaintiffs' sons, Thomas Hamilton. *See* Defendant AMC's Brief, Ex. D, p. 44, ln. 13 – p. 46, ln. 1; p. 50, ln. 12 – p. 51, ln. 17; p. 52, ln. 1-3.

9.   In order to realize this plan, Plaintiffs contacted Defendant Lomax to see if such a plan was feasible. *See* Defendant AMC's Brief, Ex. D, p. 52, ln. 4-8.

10.   Plaintiffs, as well as Raphael Hamilton, had previous dealings with Defendant Lomax before Raphael Hamilton purchased the Property. In particular, Defendant Lomax served as the mortgage broker assisting Plaintiffs in connection with the purchase of a property in Las Vegas, Nevada, but Defendant Lomax had an issue with "chang[ing] the name of the mortgage company" which took "an extended amount of time", and ultimately Plaintiffs' purchase of the property fell through. *See* Defendant AMC's Brief, Ex. D, p. 39, ln. 15-23.

11.   Plaintiff Roy Hamilton faults Defendant Lomax and attributes the failure of the closing of this property in Las Vegas to Defendant Lomax. *See* October 7, 2009 Deposition of Plaintiff Roy Hamilton, p. 16, ln. 7-10, attached to Defendant AMC's Brief as Exhibit "E".

12.   Defendant Lomax assisted Raphael Hamilton in Raphael Hamilton's purchase of the Property. Raphael Hamilton was supposed to have obtained a no-money down mortgage on the Property, but a few days before closing, Defendant Lomax informed Raphael Hamilton that the terms of the mortgage had changed and Raphael Hamilton was suddenly required to put down approximately $40,000 in connection with his purchase of the Property. *See* Defendant AMC's Brief, Ex. D, p. 41, ln. 18 – p. 43, ln. 17.

13.   Raphael Hamilton paid approximately $248,000 for the Property. *See* Defendant AMC's Brief, Ex. C, AM0561-62; *see* Defendant AMC's Brief, Ex. D, p, 44, ln. 4-6.

14. Despite these alleged previous shortcomings of Defendant Lomax, Plaintiffs, for whatever reason(s), wanted Defendant Lomax's involvement in the purchase of the Property. *See* Defendant AMC's Brief, Ex. D, p. 48, ln. 1-3.

15. Defendant Lomax thought that Plaintiffs' plan to purchase the Property from Raphael Hamilton was a "great idea" and that "it would be very easy" for Defendant Lomax to assist in that transaction. *See* Defendant AMC's Brief, Ex. D, p. 52, ln. 23 – p. 53, ln. 24.

16. Defendant Lomax was exclusively responsible for handling the "paperwork" for Plaintiffs' purchase of the Property. *See* Defendant AMC's Brief, Ex. D, p. 53, ln. 23-24; p. 56, ln. 12-18; p. 65, ln. 1-6.

17. Apart from Plaintiffs' initial meeting with Defendant Lomax, Defendant Lomax and Plaintiffs never met at any time before closing, and in addition Defendant Lomax and Plaintiffs did not communicate at all between the initial meeting and closing. *See* Defendant AMC's Brief, Ex. D, p. 65, ln. 1-16.

18. Although Plaintiffs admit there was a July 31, 2006 "Agreement to Sell and to Buy Real Estate" (**"Agreement of Sale"**) (*see* Defendant AMC's Brief, Ex. C, AM0063-AN0067) in connection with their purchase of the Property from Raphael Hamilton, Plaintiff Maria Hamilton contended that 1) she did not recognize the Agreement of Sale, as it looked "foreign" to her; 2) the signature on the Agreement of Sale was not her signature; 3) Raphael Hamilton's signature on the Agreement of Sale was not his signature; and that 4) the timing of the Agreement of Sale did not make sense. *See* Defendant AMC's Brief Ex. D, p. 54, ln. 1-2; p. 55, ln. 5 – p. 56, ln. 22.

19. Plaintiff Maria Hamilton further alleged that her signature was forged on other various correspondence as well as a Pre-Application Disclosure and Fee Agreement to Defendant Empire Mortgage Services Inc. that Defendant Lomax executed. *See* Defendant AMC's Brief Ex. C, AM0126-0127, AM0220-0221; *see also* Defendant AMC's Brief, Ex. D, p. 59, ln. 1 – p. 62, ln. 12.

20. Plaintiff Maria Hamilton testified that <u>the only paperwork she received</u> or read in connection with the Property <u>was at closing</u>:

> "[t]he only time I did paperwork with [Defendant] Lomax was on the day of closing. That was the first time I saw any paperwork, when the documents were placed in front of me at that time."

*See* Defendant AMC's Brief, Ex. D, p. 56, ln. 14-18.

21. Plaintiffs claim that they have never received any documents from anyone, including Defendant Lomax, prior to closing. *See* Defendant AMC's Brief, Ex. D, p. 63, ln. 20-24.

22. According to Plaintiff Maria Hamilton, Defendant Lomax allegedly represented that he could provide Plaintiff Maria Hamilton with a mortgage whereby Plaintiff Maria Hamilton would make $1,500 monthly payments, with such a mortgage to carry interest at 8%. *See* Defendant AMC's Brief, Ex. D, p. 123, ln. 5-21.

23. Plaintiffs "expected to get the same deal, the same amount of purchase price, $1,500.00 a month mortgage payments, and whatever percentage [Raphael Hamilton's] mortgage was at the time." *See* Defendant AMC's Brief, Ex. D, p. 76, ln. 7-10.

24. Plaintiffs never received <u>any</u> kind of written document memorializing or confirming those alleged terms. *See* Defendant AMC's Brief, Ex. D, p. 77, ln. 6-10.

25. The purchase price on the property was $248,000. *See* Defendant AMC's Brief, Ex. C, AM0275.

26. Closing on the Property occurred on August 16, 2006, just one (1) week after Plaintiffs' initial and only meeting with Defendant Lomax. *See* Defendant AMC's Brief, Ex. D, p. 75, ln. 16-21; *see also* Defendant AMC's Brief, Ex. C, AM0275-0276.

27. At closing, the only individuals present were Raphael Hamilton, Plaintiffs, Defendant Lomax, and a representative from the title agency. *See* Defendant AMC's Brief, Ex. D, p. 73, ln. 13 – p. 74, ln. 10; *see also* Defendant AMC's Brief, Ex. E, p. 30, ln. 4-15.

28. According to Plaintiffs, Defendant Lomax explained at closing that the alleged "expected" terms had changed and that instead of $1,500 monthly payments carrying an 8% interest rate, the monthly payments would be $2,100 with an interest rate of 10.6%. *See* Defendant AMC's Brief, Ex. D, p. 79, ln. 4-11; p. 81, ln. 10-24.

29. Plaintiffs have conceded that <u>Defendant Lomax fully disclosed this information</u> to Plaintiffs <u>prior to any of the documents being executed</u>:

> "Q. And did you learn this before you started singing everything?
> 
> A. Yes."

*See* Defendant AMC's Brief, Ex. D, p.. 79, ln. 17-19.

30. The "Borrower's Acknowledgment of Final Loan Terms", and a "Payment Information" document, which Plaintiff Maria Hamilton both executed and signed, unambiguously provide that the interest rate would be 10.6% and that monthly payments would start at two thousand one hundred seventy-two dollars and seventy-six cents ($2,172.76). *See* Defendant AMC's Brief, Ex. C, AM0137, AM0148.

31. Other loan documents, such as the Adjustable Rate Rider, clearly state that the "initial interest rate" would be 10.6%. *See* Defendant AMC's Brief, Ex. C, AM0089-0091.

32. Plaintiffs <u>never</u> expressed any of their alleged concerns to Defendant Lomax:

"Q. And did you voice those concerns to [Defendant] Lomax? Did you say, 'wait a minute, [Defendant] Lomax, we had an agreement here. You are not following that agreement?'

A. No, I didn't say that.

Q. You didn't say anything?

A. No.

*      *      *      *

Q. Now, you didn't raise any concerns to [Defendant] Lomax. Did anyone else from your family say anything to him about this shift with respect to these items for your mortgage and loan?

A. No. The only persons there were myself, my husband, and my son from our family and, you know, we all knew we were in a bad position. So no, we didn't say anything. My husband didn't say anything, my son didn't say anything."

*See* Defendant AMC's Brief, Ex. D, p. 83, ln. 16 – p. 84, ln. 9.

33. According to Plaintiffs, Defendant Lomax "assured" Plaintiffs that they would be able to refinance shortly following settlement, but Defendant Lomax subsequently ignored

7

Plaintiffs' requests to refinance. *See* Defendant AMC's Brief, Ex. D, p. 79, ln. 21 – p. 81 ln. 2; p. 95, ln. 2 – p. 96, ln. 17.

    34.    At closing, Plaintiffs did not review <u>any</u> of the loan/mortgage documents before Plaintiff Maria Hamilton signed all of the loan/mortgage documents:

> "Q.    Now, is it your testimony that you didn't receive any of these [loan/mortgage] documents prior to closing?
>
> A.    Yes.
>
> \*    \*    \*    \*
>
> Q.    Did you review any of [the loan/mortgage documents] before you signed?
>
> A.    No.
>
> \*    \*    \*    \*
>
> Q.    You didn't review anything prior to closing, correct?
>
> A.    No."
>
> \*    \*    \*    \*
>
> Q.    And so, it's your testimony, and I think this will be my last question, but to sum it up, it's your testimony that prior to closing you were not given any documents regarding the mortgage, correct?
>
> A.    Correct.
>
> Q.    And it's your testimony that you showed up on August 16th, 2006 at the closing and you signed these documents without reading them, correct?
>
> A.    Correct."

*See* Defendant AMC's Brief, Ex. D, p. 151, ln. 13-15; 71, ln. 17-18; p. 73, ln. 5-7; p. 103, ln. 21 – p. 106, ln. 12; p. 169, ln. 16-24; p. 107, ln. 5-10.

35. Plaintiffs read, verified, and signed Uniform Residential Loan Application documents that indicated that Plaintiffs' monthly income was $10,000, even though that figure was false and had absolutely no factual basis whatsoever. *See* Defendant AMC's Brief, Ex. D, p. 69, ln. 4 – p. 71, ln. 1; *see also* Defendant AMC's Brief, Ex. C, AM0192.

36. Another document executed by Plaintiff Maria Hamilton, entitled "Borrower's Certification of Income" (*see* Defendant AMC's Brief Ex. C, AM0223), again reaffirmed the admittedly false monthly income figure of $10,000 and the admittedly false annual income figure of $120,000.00. *See* Defendant AMC's Brief, Ex. D, p. 97, ln. 15 – p. 98, ln. 10.

37. At the time of closing, Plaintiff Maria Hamilton was unemployed. *See* Defendant AMC's Brief, Ex. D, p. 24, ln. 19 – p. 25, ln. 2.

38. After closing, Plaintiffs assert that they made the first three (3) months' mortgage payments in full and on time. *See* Defendant AMC's Brief Ex. D, p. 96, ln. 2-8.

39. After allegedly making payments for the first three months, Plaintiffs admittedly began their repeated defaults under the mortgage and the loan documents. *See* Defendant AMC's Brief, Ex. D, p. 99, ln. 7 – p. 103, ln. 7.

40. According to Plaintiff Maria Hamilton, Plaintiffs repeatedly missed multiple payments under the mortgage in 2008 and the last payment that she claims to have made under the mortgage "was some time – perhaps the end of [2008]." *See* Defendant AMC's Brief, Ex. D, p. 103, ln. 1-7; p. 100, ln. 24.

41. As a result of Plaintiffs' repeated defaults under the Mortgage, Plaintiffs filed for Chapter 13 bankruptcy on June 4, 2007, in Bankruptcy Petition No. 07-17761-GMB (the **"Bankruptcy Action"**). *See* Defendant AMC's Brief, Ex. D, p. 11, ln. 21 – p. 12, ln. 3.

42. Plaintiffs failed to adhere to their bankruptcy plan and failed to tender the required payments for the Property while Plaintiffs were in bankruptcy, and as a result, Plaintiffs were dismissed from the Bankruptcy Action on September 3, 2009. *See* Defendant AMC's Brief, Ex. D, p. 12, ln. 9-14; p. 164, ln. 2-13.

43. Plaintiffs readily admit that Plaintiff Maria Hamilton has defaulted on her mortgage:

> "Q. Now, since you haven't maintained your mortgage payments, Ms. Hamilton, would you agree that you failed to fulfill the promises that are contained in your mortgage and note?
>
> A. Yes."

*See* Defendant AMC's Brief, Ex. D, p. 166, ln. 4-8.

44. Plaintiff Maria Hamilton concedes that she is in default of her mortgage due to her failure to pay taxes and insurance, which even she recognizes is her obligation under the mortgage and loan documents. *See* Defendant AMC's Brief, Ex. D, p. 165, ln. 1 – p. 166, ln. 3.

45. Plaintiffs wholly concede that they have had no substantive contact or dealings whatsoever with Defendant AMC. Apart from one (1) instance in which Plaintiff Maria Hamilton called Defendant AMC regarding the payment of a tax bill, Plaintiff Maria Hamilton has had no communication with Defendant AMC:

> "Q. Have you had any other dealings, phone calls, meetings with anyone from any mortgage company in this case?
>
> A. No.
>
> \*             \*             \*             \*
>
> Q. But you didn't have any dealings with [Defendant AMC] prior to or at closing, did you?
>
> A. No."

*See* Defendant AMC's Brief, Ex. D, p. 111, ln. 17 – p. 112, ln. 13; p. 171, ln. 12-14.

46. In addition, Plaintiff Roy Hamilton admits that he has never spoken to anyone from Defendant AMC and that moreover, he never had any kind of communication whatsoever with Defendant AMC. *See* Ex. E, p. 31, ln. 10-18. Both Plaintiffs testified and confirmed that no individual from Defendant AMC attended closing. *See* Defendant AMC's Brief, Ex. D, p. 172, ln. 16-17; *see also* Defendant AMC's Brief, Ex. E, p. 30, ln. 4-15.

47. After closing, Defendant AMC sold Plaintiff Maria Hamilton's mortgage to the SPS Defendants. *See* Defendant AMC's Brief, Ex. D, p. 160, ln. 17-23.

48. Plaintiff Roy Hamilton is not a mortgagor, and is not named or included in any of the loan documents:

> "Q. It's solely your wife that is on the mortgage documents here; is that correct?
>
> A. Yes."

*See* Defendant AMC's Brief, Ex. E, p. 12, ln. 16-18.

49. Plaintiffs designated Plaintiff Maria Hamilton as the sole mortgagor for the Property to leave open the possibility for Plaintiff Roy Hamilton to purchase additional real estate. *See* Defendant AMC's Brief, Ex. E, p. 12, ln. 19 – p. 13, ln. 4.

50. Plaintiffs' purported basis of an alleged agency relationship between Defendant Lomax and Defendant AMC only consistent of Plaintiffs' "assumption[s]":

> "Q. And what is your basis for saying that Defendant [Lomax] was a representative of [Defendant AMC]?
>
> A. It is my assumption."

*See* Defendant AMC's Brief Ex. E, p. 43, ln. 6-8.

51. Plaintiffs repeatedly conceded at their depositions that they have had no substantive contact or dealings whatsoever with Defendant AMC. *See* Defendant AMC's Brief, Ex. D, p. 111, ln. 17 – p. 112, ln. 13; p. 171, ln. 12-14; p. 172, ln. 16-17; *see also* Defendant AMC's Brief, Ex. E, p. 30, ln. 4-15; p. 31, ln. 10-18.

52. The TILA Disclosure Statement, signed and executed by Plaintiff Maria Hamilton at closing, and under the statement that "I acknowledge reading and receiving a complete copy of this disclosure" unambiguously details and defines the annual percentage rate; finance charges; the amount financed; the total dollar number of payments; the number of payments; the amount of payments; the due date for payments; that the loan would have a variable rate feature; that Plaintiff Maria Hamilton was giving a security interest in the Property; that late charges would be assessed at 5% of the overdue payment; and that there would be no prepayment penalty. *See* Defendant AMC's Brief, Ex. C, AM0274; *see also* Defendant AMC's Brief, Ex. D., p. 168, ln. 18 – p. 169, ln. 8.

53. As an example of the documents supplied to Plaintiff Maria Hamilton at closing, under "IMPORTANT NOTICE TO BORROWER(S)", which was executed and signed by Plaintiff Maria Hamilton at closing, that Notice indicates:

> "Oral agreements, promises or commitments to lend money, extend credit, or forebear from enforcing repayments of a debt, including promises to extend, modify, renew, or waive such debt, are not enforceable.
>
> To protect you (Borrower(s)) and us (Lender) from misunderstandings or disappointments, any agreements we have reached covering this loan transaction are contained in the loan documents you have signed today. Your loan documents are the complete statement of the loan agreement reached between us. Any subsequent agreement between us regarding the loan transaction must also be a signed writing to be legally enforceable.
>
> BY SIGNING BELOW, YOU (BORROWER(S)) HEREBY ACKNOWEDGE:
>
> (1) You have been given an opportunity to read your loan documents, have read them, and fully understand the terms of this loan transaction; and
>
> (2) You have received a full and complete set of all the loan documents you have signed with this transaction, including a copy of this notice."

*See* Defendant AMC's Brief, Ex. C, AM0147.

54.    Among the disclosures which Plaintiff Maria Hamilton "acknowledged" receiving, and in fact signed such documents, include a "RESPA SERVICING DISCLOSURE" (*see* Defendant AMC's Brief, Ex. C, AM0145); a "NEW JERSEY PROPERTIES – RIGHT TO OWN ATTORNEY DISCLSOURE" (*see* Defendant AMC's Brief, Ex. C, AM0158); a charges statement plainly setting forth her monthly payments, interest rate, and fees associated with the mortgage loan (*see* Defendant AMC's Brief, Ex. C, AM0161).

55.    The Settlement Statement at closing clearly identifies all charges that were made in connection or taken from the proceeds of the loan. *See* Defendant AMC's Brief, Ex. C, AM0275-0276.

56.  Defendant AMC utilized Plaintiff Maria Hamilton's loan application and income statements in providing Plaintiff Maria Hamilton with the mortgage loan and disbursing $235,600 on Plaintiff Maria Hamilton's behalf. *See* Defendant AMC's Brief, Ex. C, AM0275.

57.  Plaintiff Maria Hamilton acknowledged that her monthly income statements which she signed are completely inaccurate. *See* Defendant AMC's Brief, Ex. D, p. 69, ln. 4 – p. 71, ln. 1; p. 97, ln. 15 – p. 98, ln. 10.

58.  Plaintiff Maria Hamilton acknowledged and signed a document relating to payments, fees, and charges which clearly outlined:

> "You will be charged a total of $7,590.72 in fees to obtain this mortgage loan. Theses fees include $2,093.72 paid to us, $2,956.00 paid to your mortgage broker, and $2,541.00 which will be paid to others for services or fees charged in connection with your loan. In addition, we will pay your mortgage broker $4,712.00."

*See* Defendant AMC's Brief, Ex. C, AM0161.

59.  The loan to Plaintiff Maria Hamilton was in the amount of $235,600. *See* Defendant AMC's Brief, Ex. C, AM0275.

60.  In order to exceed the 8% HOPEA threshold, the fees assessed to Plaintiff Maria Hamilton would have had to have exceeded $18,848. *See* Defendant AMC's Brief, Ex. A.

61.  The $7,590.72 amount in fees assessed to Plaintiff Maria Hamilton only amounts to 3.22% of the loan amount. *See* Defendant AMC's Brief, Ex. C, AM0161.

62.  Plaintiffs only allege two (2) paragraphs in support of their claim under RESPA. Plaintiffs' pleading of the RESPA claim is limited to the following:

> "72. Plaintiffs' loan was a federally related consumer mortgage loan as defined by RESPA, 12 U.S.C. §2602, which Defendants are in violation thereof at all times material, including but not limited to the pre-paid finance charges paid by Plaintiffs is believed neither properly disclosed nor *bona fide* and *reasonable* under TILA/HOPEA, thus "fee splitting," a violation(s) herein, to which Plaintiffs are entitled to recoupment and relief under the CFA.
>
> 73. To the extent a request has not been previously made by Plaintiffs, Plaintiffs here serve a Qualified Written Request ("QWR") for a full accounting requiring specific itemization and enumeration of all charges as well as the dates thereof alleged cumulatively now owned by Plaintiffs under the loan and to correct those charges and that amount consistent with the above defect. The failure to timely acknowledge this QWR or a prior QWR, provide the requested accounting, and correct the defects here alleged constitutes an additional RESPA violation(s). 12 U.S.C. §2605."

*See* Defendant AMC's Brief, Ex. A, ¶¶ 72, 73.

      63.    When asked specifically what Defendant AMC allegedly "did improper in this suit such that [Plaintiffs have] named them as a Defendant", Plaintiffs only responded that "perhaps" Defendant AMC "didn't do due diligence" in Defendant AMC's approval of Plaintiff Maria Hamilton's loan:

> "Q.    Specifically with [Defendant AMC], what are you claiming that they did improper in this suit such that you've named them as a Defendant?
>
> [Plaintiffs' counsel].  Same objection. You can answer.
>
> A.    Well, being that they were the mortgage company at the time that, you know, issued the mortgage through the broker or, you know, through [Defendant] Lomax, that perhaps they didn't do due diligence in approving the loan to me through [Defendant] Lomax.
>
> Q.    Any other basis for why [Defendant AMC] has been named here?
>
> A.    No."

15

*See* Defendant AMC's Brief, Ex. D, p. 147, ln. 1-18.

64. When asked the same question as to what his "basis for bringing [Defendant AMC]" into this lawsuit, Plaintiff Roy Hamilton's only response was that:

> "[Defendant AMC] would be our -- at the time our mortgage holder. Whatever relation [Defendant AMC] had with [Defendant] Lomax is -- I have no idea, beside the mortgage lender.

*See* Defendant AMC's Brief, Ex. E, p. 23, ln. 8-20.

65. Plaintiffs' tax returns indicate that Plaintiffs adjusted gross income was $10,249 in 2007 and $11,738 in 2008. *See* Defendant AMC's Brief, Ex. F.

66. Although this action has been pending for well over one (1) year, and the discovery period ended on February 1, 2010, Plaintiffs have failed to undertake any discovery in support of their claims.

67. With discovery closed in this matter, Plaintiffs have not (1) propounded any interrogatories; (2) propounded any document requests; (3) propounded any requests for admissions; (4) subpoenaed any records from third parties; or (5) conducted depositions of any individuals.

68. When Plaintiffs were asked by Defendant AMC to "[s]et forth all facts and identify all documents which support or refute your contention that Defendant AMC violated the Truth-in-Lending Act/Home Ownership and Equity Protection Act in Count I of your Complaint" and to "[s]et forth all facts and identify all documents which support or refute your contention that Defendant AMC violated the Real Estate Settlement Procedures Act in Count II of your Complaint", Plaintiffs only response to both Interrogatories was: "See Complaint. By way of further response, [Defendant] AMC is a successor in interest to Argent and violations were apparent on face of papers." *See* "Plaintiffs' Responses to Defendant's Argent Mortgage Co., LLC, Interrogatories", ¶¶ 15, 16, attached to Defendant AMC's Brief as Exhibit "G".

      Respectfully submitted,

      **KAPLIN STEWART MELOFF REITER & STEIN, P.C.**


      By:    **/s/ Parker V. Sherry**
           MICHAEL P. COUGHLIN, ESQUIRE
           PARKER V. SHERRY, ESQUIRE
           Union Meeting Corporate Center
           910 Harvest Drive
           Blue Bell, PA  19422
           Telephone:  (610) 941-2470
           Facsimile:  (610) 684-2033
           mcoughlin@kaplaw.com
           psherry@kaplaw.com
           Attorneys for Defendant Argent Mortgage Company, LLC

**Dated:  March 4, 2010**